case number 25688 united states of america versus mickey rife argument not to exceed 15 minutes per side mr inman you may proceed for the appellant thank you good morning may it please the court learned counsel my name is james and i'm court appointed counsel for appellant mickey rife i've asked to reserve three minutes for rebuttal very well thank you your honor uh this appeal concerns the constitutionality of 24 23 c as applied to appellant rife he would conditionally plead guilty based on sexual contact that he had with two minors while living in cambodia where he resided more importantly the case presents issues of what it means to be sovereign in the scope of congress's police powers only the states possess the general police power and the federal government does not as we're instructed in morrison this circuit has addressed this issue in the context has addressed the statute in the context of a prior panel decision the al-maliki decision which addressed constitutional concerns under the foreign commerce clause unfortunately in that case the appellant did not preserve the issue and it was reviewed under plain air um in deciding that case the panel the previous panel noted that there was a split in the circuits and thus it could not find that there was plain air um but again if the al-maliki panel had decided that the issue was or that the that panel was bound by other decisions of the circuits that had decided the issue it would have applied that law of course the sixth circuit is not bound by decisions of other circuits um the district court below instead of addressing the foreign commerce clause issue that was presented um decided that the that subsection c was constitutional under the uh treaty power as implemented by the necessary and proper clause of the constitution and essentially what the district court said is that 2420 that can i ask you a question on um why exactly do you claim that the foreign commerce clause doesn't have a more expansive ambit than the interstate commerce clause particularly here and we're in a situation in which the other countries sovereigns have asked for us to participate no one has objected um they're all uh they're all signed on to this optional protocol um why why isn't give me your position on why that doesn't matter here so there are two powers that that your question has implicated here and plainly mr bragg's conduct was non-commercial conduct so the commerce clause doesn't reach it at all the if you look at the text of the of this clause in the in the constitution it uses the term uh commerce that applies both to all three of the interstate commerce foreign commerce and commerce with indian tribes um however with respect to foreign commerce and indian and commerce with the indian tribes they use the word with instead of among so um i know that there's a tendency to borrow from interstate commerce clause litigation uh case law case law but the issue is what the difference between with and among means that's where we start from if you look back at what the framers were intending when the constitution was drafted the the word among is chiefly to designate the federal government scope of activity between commerce between the states so the idea of federalism is born out of the idea of sovereignty sovereignty of the states to decide issues within their boundaries but it's not limited here we don't have that federalism concern here because we're in the foreign commerce so the question becomes um are we stepping on their toes and it seems to me that that we're not stepping on their toes we've been invited and asked to participate so to the first point um the the issue with the the commerce clause is that we have not been uh invited to in this particular instance so the treaty that is supposedly implemented the optional protocol deals only with commercial sex crimes child prostitution child slavery and trafficking these are all there's a separate treaty that the united states expressly did not join the convention on the rights of the child that would touch on um child sex abuse that doesn't have a commercial component and and we are not party to that treaty and we've resisted joining that treaty well um i'm i'm struggling with where your answer's going because we have such a long history of recognizing that um recognizing that commerce can be impacted by even local activities all the way back from wickard in the 40s and race in 2005 those were claims of only local activity and yet both of those were considering the impact whether there is i think we say whether congress has a that the activity would have a substantial effect on commerce that's race why doesn't that answer the question here well let me go back to the issue about federalism is the issue of sovereignty we call it federalism but it's the sovereignty of the states the same issue of what can you do within the boundaries of a sovereign entity applies here what can you do within the bounds of a sovereign foreign nation and the the fact of the matter is that the applicable applicable case law here is morrison not race so wickard and and race both deal with a fungible fungible commodity wheat and marijuana that doesn't have anything to do with a sexual act um even in you know from the time of wickard uh the view of the commerce clause was quite expansive but that was reined in by lopez lopez says the commerce clause is not without limits and then in 2000 when morrison was handed down the court told us that you cannot aggregate violent offenses these would be considered violent offenses for purposes of the commerce clause this is not a situation in race they're looking at regulation of drugs basically they're not looking at the criminal aspect of marijuana possession in fact if marijuana had been legal if it had been not been a crime to possess marijuana race would have been decided the same way because congress can regulate drugs and interstate commerce but here well i don't interrupt your your point here mister um let's say that uh uh the executive uh reaches agreement on a treaty regarding the rights of women and and so the signatories to that agree that they're going to have certain minimum uh protections and standards regarding the rights of women in their countries and assume further that uh uh this obligation itself requires the united states to enact among other things a law identical to the violence against women act all right and this is after morrison would congress then because a country has invited us to do this to regulate our citizens in a particular manner does that mean that that the congress in this example would then under the under congress's power to enact laws necessary to carry out treaties would congress then be able to do under this clause what the supreme court said it cannot do under the commerce clause no it cannot and what judge what you're raising is a concern that was raised by justices alito and thomas um in the bond case um it's basically bypassing the supreme court's authority to rule on constitutional issues the supreme court says i mean isn't it isn't it bypassing the whole idea that that the constitution prescribes a government of limited powers exactly i mean that's that's really the backstop here it's not federalism i mean you know federalism you know there are there are provisions of the constitution that that that uh allow federalism to arise but i mean we're we're enforcing the constitution itself at the end of the day right and the minute the words were put to paper to limit the federal government is where the limit arises we don't and all of the decisions we're talking about say the same thing the fact that council idea how your position though with missouri v holland are you just saying that that was a wrongly decided case i'm sorry i missed the first part of missouri v holland which i believe the supreme court recognized in that case that there could be a treaty to regulate something that congress wouldn't necessarily have the power to regulate on its own right isn't that what that case stands for i don't believe so the treaty power is not a congressional is not a power of congress um the power that's really used here is the necessary and proper clause and there are limits to that power but i mean it has to be uh necessary it that it's implementing and proper includes um that the the law the statute that is enacted by congress um fits within the spirit and the letter of the constitution so if the constitution is law necessary to um to the treaty here the treaty is to prevent uh commercial exploitation of of um minors um right granted this was not commercial but why couldn't you say though having a a climate a legal climate of no um no american citizen abroad should be engaged in sexual conduct with minors why couldn't why isn't that rationally related to the treaty here well we're taught in morrison that you can't relate those things it's not a it's not an economic uh issue and the power to act in the hands of congress has to come from some power that's expressed in the constitution right mr inman let's say that uh the executive you know goes off in a flyer and agrees to a treaty that in effect requires the passage of bills of tainter uh against certain people in the united states all right is that a quote valid treaty within the meaning of justice holmes uh terse to the point of cryptic sentence in missouri v holland i don't believe so and why is it not a valid treaty well even in this context where we're looking at at the uh the crime the commercial crimes that are involved with this treaty you could take the um you could take this extension of jurisdiction or authority over citizens abroad and apply it to citizens domestically we don't have to find a crazy hypothetical to look at the danger here so we're governed where the federal government doesn't already um have the power to criminalize this conduct you know a purely domestic sexual abuse or sexual molestation crime and it doesn't do that um using the treaty power it could bypass those restrictions here and i see that i'm out of time um that's okay um judge chance did you have a question you were looking to ask no i think we can we can pick it up on very well all right mr inman thank you um you'll get your rebuttal we'll hear from the government good morning your honors may it please the court sonia ralston for the united states i'd like to start with the concept of federalism versus sovereignty and talk a little bit about international law and how that plays into um what we're talking about there the constitution at its framing was mediating the relationship between the states and the newly formed federal government foreign sovereigns are not a party to that relationship international law serves mediating function between foreign sovereigns and this now you would agree that the constitution also was i mean its principal purpose actually was to limit the powers that this new federal government had you would agree with that right actually i disagree i think the point of the constitution was to expand on the powers that the federal government was rated under the articles sure of course you know as compared to the pittance that the federal government had under the articles of confederation but i mean here we're coming out of the you know um the uh the framers have have just emerged from this struggle in which they rejected the claims of parliament to absolute power unlimited power and the problem there was uh the british constitution as great as it is with its internal dynamics they didn't write down the limits on government power and so then then parliament presumes to assert uh what what it called sovereignty which is absolute power and so i let me just ask you again because this would be an extraordinary position i think for the government to take um uh would you agree it's not a relative question about the powers under the articles of confederation would you agree that the constitution limits the powers of the government that uh that that operates under that kind under the you know the federal government it limits those powers it's a it's circum it's granting but also circumscribing the powers of the federal government yes and certainly in the domestic sphere that's true but the one of the main purposes of the constitution is to give the federal government plenary power over international affairs that was one of the key problems they were trying to solve right but it doesn't i mean is it is it the government's position that the federal government has has in fact absolute power over americans when they leave the the bounds of this country by way of this treaty power and etc i think it depends on the facts of the situation but i think it's not absolute power they could prescribe any rule of conduct whatsoever with respect to americans overseas and that's that's okay it would depend on whether you know there are structural things there about the two-thirds advice and consent the willing treaty partner of a foreign nation international law consistency the explicitness of extraterritoriality and but i want to push back on the idea could you give an example of any instance where uh the uh the government could not uh agree to something internationally that would affect an american citizen is there any example of anything that you would say that would go too far as far as the treaty power is concerned absolutely your honor reed versus covert the federal government cannot enter into a treaty that derogates um the rights protected by the bill of rights so reed versus covert is a case about the fifth and sixth amendments the rights to criminal um procedure and the supreme court held there this is again building on what's talked about in rigs in the 19th century that the the limited this is what it means to be a valid treaty right it can't override the expressed limitations okay and would you agree that the federal government could enter into any treaty to criminalize any conduct of of any american citizen is there any instance where there's any kind of a crime that the federal government could not agree to under the treaty power uh to criminalize for an american citizen abroad um certainly i think it would be a very close question if there were some first amendment type crimes things that are in fact illegal in other countries that are protected by the first amendment um beyond i mean anything that would be implicated i don't think you criminalize you know providing counsel to terrorists or something like that um so i about the bill of rights yes if you're talking about um you know that we're not allowed to send our agents into foreign countries uninvited so um if another country is unwilling to assist or allow the prosecution it wouldn't matter what the statute says right we can't be sending fbi agents to countries that don't want us um and i also want to i could just i'm sorry if i could just follow up on that question um so i mean as i understood your the first part of your answer miss ralston to judge bush you agreed that a valid treaty uh a treaty is not valid if uh the government would is agreeing to exceed the limits of its constitutional powers i think is what you said um just now is that a fair paraphrase so yes but i think we may understand what those limits disagree i bet we do but let okay but um and that's fair no i understand that um but uh well i mean apart from um you know certain uh you know affirmative rights that are granted uh under the constitution the bill bill of rights um the the enumerated powers that are granted say under article one or even the the president's powers vested under article two those we can all agree that those have some boundaries right i mean like you know the interstate commerce power has some boundaries the the foreign commerce clause has some boundaries uh the court hasn't really spelled those out in the same way uh but they have some boundaries and so if if the president let's say those boundaries you know under the foreign commerce clause uh those we'll call those boundaries x and the president then enters into an agreement where he agrees to regulate the conduct of american isn't the treaty then invalid with respect to the plus 10 part to the extent it's exceeding the power of congress to regulate citizens overseas there there's no unless i'm missing something there doesn't seem to be any uh power vested by the constitution into one of the branches that allows the government to do to united states citizens the 10 part okay um i understand your question i think the answer is that the treaty power combined with the necessary and proper power are the power vested in both the president and the congress to effectuate the whole realm of international relations to make diplomacy effective and the treaty is only valid to the see it seems i guess this is really an interesting case because it's about first principles you know and it's not often we get to to write on a slate that is as clean as this one is but it would seem to me that the treaty power is uh is a power of the president initially at least to enter into agreements under which the the the the federal government agrees to exercise its constitutional powers in certain ways um that we might might agree that that pursuant to the commander-in-chief power we're going to have a hundred thousand soldiers in okinawa and through the appropriations power we're going to to pay a certain amount of money to the japanese government each year um and and we might have another treaty where we you know lower tariffs or we agree to provide certain aid in exchange for some some benefit all of these are exercises of actual you know enumerated constitutional powers um uh but it would seem like that the executive at least without lawfully at least can't agree to do that's beyond those powers to to to you know to to to uh uh enact the violence against women act here in the united states i mean the hype is hypothetical i i mentioned earlier i mean would you agree that that treaty let's say we have a treaty that is just like we're gonna we're going to enact the violence against women act in the united states we really want to get that done the court struck it down we have found a will willing treaty partner and we're going to have this reciprocal agreement each of us is going to pass this so now we go back so now can congress lawfully pursuant to this you know power to enact laws necessary to carrying out a treaty can they now do can they basically overrule morrison and enact that law that's kind of that's what i'm driving at and it seems to me that when you talk about plenary power you're you're kind of assuming that the executive has this like absolute power to enter into treaties and everything's valid and then congress can do whatever it want short of violating like something in the bill of rights but i'm suggesting that the government can't go beyond it can't be valid if it goes beyond so let me just i'm sorry for the speech it's kind of a long setup but so what do you think about that violence against women treaty and that hypothetical um okay so i think i have three responses so first is that under missouri versus holland yes and i think that's exactly what the treaty at issue in holland is it's dealing with something that's purely intrastate that couldn't be passed absent the treaty but because of the treaty it can second even if you think the violence against women act treaty is on the other side of the line you can draw a line between treaties that deal in their subject matter with internal matters and with a problem that is global in nature the treaty here deals with a global problem the sex tourism sex trafficking child exploitation problem that by its nature crosses international boundaries so that treaty is very akin to the treaty in holland where we're talking about the birds that are migrating back and forth across international boundaries and the third thing to think about is the necessary and proper clause as it's outlined in comstock which is you know you don't have to go back to the 40s that case is only 10 years old and there they're talking about the federal power to civilly commit people who have finished serving their federal sentences merely because they were at one point in federal custody and if you look at the founding this idea that we would attach federal law even federal criminal law to the citizens abroad is not crazy there were laws at the time of the founding that did this the 1789 crime bill has a treason provision that applies to u.s nationals wherever in the world the 1799 logan act which is still in effect in is based on the nationality principle and prohibits private diplomacy by u.s nationals anywhere in the world and this idea of the nationality principle of international law goes back to ancient times to greek and egyptian times let me ask um i'm struggling i understand the importance of the slippery slope argument because there are dangers and it can help us um help us see the outcome of what we may be talking about but also here it is law that tells us how to look at this as applied challenge look at it on the facts that it has the question for me is what tests apply and i don't think that we can just look at this um just look at this in in the largest scheme of things in deciding because we do have tests that our supreme court and our our um circuits have enacted that tell us how do you make this decision of when the very thing that judge kethledge asks is being violated and what our law says is there has to be a in drawing on the commerce concept because that's the issue here is there any is there any commerce going on well is there a substantial relationship to commerce we know in rife they defined that by did congress have a rational basis for concluding that the so for our as applied challenge how do you answer how your case fits within the parameters that we've already established in this arena you're exactly right your honor and i think the the way the dc circuit explains it in the park case is very analogous here the facts are almost identical and we're talking about him engaging in commercial activity he's accessing these victims through his indicates the abuse occurs during at the school during the school day and then you have this connected to the broader market for child sexual abuse that we have evidence that congress was aware is driven in large part by americans traveling abroad we have other countries asking the united states to get involved here i think also you can consider not just the commerce but the commerce and the treaty working together that this is a you know we don't have to pigeonhole the power that congress is exercising it can be a broader synergy of powers that are working together to effectuate especially international relations which is a purely quintessentially necessarily federal endeavor um miss ralston i think you talked about the uh uh the crime bill probably judiciary act of 1789 they had some treason provision in there um that treason provision was not an exercise of the foreign commerce clause you would agree right i mean it's something else yeah it's something else i mean you know the constitution refers to treason a number of times makes clear that is something that the federal government can can prosecute and obviously prescribe it actually prescribes a an evidentiary rule for conviction so i mean that that example really doesn't tell us anything about the uh the scope of the foreign commerce clause the logan nobody's been prosecuted under that in like centuries if i recall right it's rarely used but one could say that it's rarely used because it's effective and i think it's the important thing to keep in mind is that these demonstrate that the idea of extraterritorial application of u.s criminal law to u.s nationals based on the nationality principle of international law was not a crazy foreign idea to the framers this was something that was established and within the wheelhouse of something they could think of and the logan act if you think about that it's not tied to a particular exercised power it's part of the necessary and proper to effectuate diplomacy and foreign relations which is inherent in the federal government well i mean an act that has lain in destitute for you know two centuries isn't necessarily exhibit a for a robust power of congress to to regulate american citizens overseas but let me let me follow up on judges judge stranches question uh which is you know very the the issues she raises are very important to this case i guess i have an antecedent question to that which uh which is i'm not seeing in any supreme court precedent or precedent from this court a case where the uh the supreme court or this court already uh has in fact extended the wickard regime which is of comparatively recent vintage i mean when we look back to the you know the history of the country uh extended the wicked rule to the foreign commerce clause i mean nothing said i don't i don't think we're bound to say that wickard applies in this case is frankly what i'm suggesting and i just obviously want to give you a chance to say no you can't do that because you are bound over here so two responses to that the first is what the supreme court has said about the foreign commerce clause vis-a-vis the interstate commerce clause and you have um stranahan chicago the university of illinois case and japan line which are three cases in which the court has said um the second two about interstate commerce third about the indian commerce clause in that the foreign commerce clause is broader can you uh can you just repeat the names of those cases real quick so i know you're probably referring to like footnote 13 and japan airlines uh there's information you know penumbra's uh that we've got from that uh all right so we've got japan airlines and what were the other two cases um yeah so japan line is it's actually a shipping case not an airplane oh i'm sorry and then the that's okay the other one is the chicago university of illinois at chicago i think it's about um tariffs and taxes and whether we can import things but they say that the foreign commerce clause is broader and you have the indian commerce cases um where stranahan says that the power to regulate foreign commerce is certainly as efficacious as that to regulate commerce with the indian tribes and then other cases cotton petroleum and lara these are cited in a brief where they're talking about how the width you know that textual language in the indian commerce clause right is with as it indicates a broader more expansive power and so i think if you take those statements even at face value i don't think you have to read very far to say that the interstate clause or the foreign clause encompasses at least what's in the interstate clause that it is a bigger circle and that's what every other court of appeals to have addressed this has also held so you know i mean to look at japan airlines i mean that you know here we have a footnote 12 or 13 or whatever where justice blackman sort of gestures towards the constitutional history and says uh that you know perhaps james madison thought the foreign commerce clause was greater than the uh the interstate the power was greater than the interstate commerce clause but i i guess this this is my uh bachelor's degree in early american history i guess uh uh bias but i mean the idea that james madison was contemplating the wickard regime to the extent he's saying that the the foreign commerce clause power is greater than the i mean we're talking about the comparison is is with two utterly different things i mean you know if james madison said he thought the foreign commerce clause is greater than the interstate commerce clause i'm quite certain he was not about the what the interstate commerce clause is turned into post where and so it doesn't that i mean if if if we're going to talk about history as japan airlines sort of you know intimates i mean that would seem to be a pretty obvious historical conclusion that well you know the if we're talking about you know if we want to go back to gibbons v ogden uh as a commerce power maybe the point holds but it doesn't post 1943 well um did you in your list of cases council did you were you talking about trustees of the university of illinois yes that was the case you were talking about that does does quote gibbons but says pretty clearly the principle of duality in our system of government does not touch the authority of the congress and the regulation of i guess the question becomes are those grounded principles that still can both circumscribe and state the power of of the congress as created through our constitution that have now been further honed to the tests that we see in race i mean what is your position on that it seems to me that the tests we have stated are applicable here and fairly broadly stated so particularly since we are in a situation of relating to other um foreign sovereigns who have both said that we aren't doing our share of work in the problem that we have helped create across the world with child sexual abuse and have joined the optional protocol and have requested our assistance and not objected to the law being passed does do all those things not play into the tests that have been stated in our case law that's exactly right your honor and i want to point out again the idea that the test here is whether there is any rational relationship between this statute and either foreign commerce or this treaty or the two of them working together and so can take that holistic approach and say that based on the evidence we have that congress had there is a relational relationship here and you know to go back to the idea about morrison i just want to distinguish that this is you know to make the commerce connection as in morrison this would have to be us arguing that this is commercial because sexual abuse victims need therapy afterward and that's not our argument our argument is that there is a thriving market a commercial market for the sexual exploitation of children particularly in countries like cambodia and that the non-commercial or cases where we cannot prove beyond a reasonable doubt that money changed hands sexual exploitation of minors is part of that market the same way that race and record say that the you know purely local production is part of the market the way that this court has said that child pornography even produced in one person's home is part of the market so i think that there's ample space in those in fact that all of these precedents together compel the conclusion that this statute is constitutional especially when we're talking about the deference owed to congress both in terms of the constitutionality of statutes and in the foreign relations realm where the nation needs to speak with one voice let me ask you just just one quick go ahead jane does it matter here that we know scientifically that um that child sex abuse in um in grooming techniques is related to the passage of consideration that not it that is not usually considered consideration in commerce it's not the purchase and payment for a sexual favor it is the provision of consideration that is in fact consideration in gifts and promises and grooming techniques and help with family i mean this is the classic situation in child sexual abuse doesn't that play into why it is in fact implicating commerce yes i would say that's precisely right as the dc circuit explained in the park case that we're talking about closing these loopholes where there is you know the treaty is talking about any form of consideration which i think does encompass that type of grooming that you're talking about but that's not encompassed within the 2423b need to prove quid pro quo beyond a reasonable doubt and so here we're closing the loopholes we're trying to make a comprehensive regulatory system and i would point out we're looking at the market that it's not unusual for defendants to engage in both commercial and non-commercial conduct in the bianchi case from the third circuit involves both clark the ninth circuit case um is technically a commercial case but implies that the defendant did both in its discussion of the facts the reed case out of the dc district court uh the defendant committed both incest and child prostitution paid for child prostitution so this isn't some made-up link that um the markets are connected that the particular iteration of the scientific evidence that children who are abused often become prostitutes or engage in the sex trade as a result of what they experienced as children yes and i think that that takes the the link one step further but that also reinforces the commercial nature of the entirety of the market yeah um mr allston i think all of us would stipulate that the crimes we're talking about are horrible crimes just for the record all right and i don't have any disagreement with uh judge judge stranches uh most of what she just said there um and and i i think everyone would agree that congress can regulate the channels of commerce uh and and say that those channels of commerce cannot be used to commit these terrible crimes uh which you know are in um but i get you know again this case this is a fascinating case because it goes to the question you know are the federal government's powers limited or not are they limited or are they absolute and so my question is let's say let's take it out of this particular sort of you know provocative context and let's just say generically there's some offense you know some kind of which uh americans who want to participate in this criminal activity they actively use uh the channels of foreign commerce travel and they travel and they go over and do whatever financial crimes in in different places um but is it with respect to trying to stop that crime is there a limit on con and is there a limit to congress's power with respect to uh uh bringing criminal cases let's say you know you have people americans overseas who at some point commit these financial crimes all right and obviously prior to that they travel is is there any limit to the government's ability to prosecute uh any american overseas who has traveled to get there to commit these crimes i mean so the american travels say the american has never even heard of this crime before the american travels without any intent to commit a crime the american goes over there and uh and resides there and i know you know that maybe isn't exactly the government's view of the facts of this case but you know is there a limit to how long after the american becomes an expatriate and moves over there and then later commits this offense 20 years later i mean can the government still swoop in and say well you know this is a terrible thing we got to close all the loopholes and you know this is necessary and proper and just no breathing space etc etc de facto absolute power can they come in 20 years later and prosecute the person so two responses the first is that the supreme court's decision in black mirror suggest the answer is yes okay you say that by retaining your u.s citizenship you retain the obligations of citizenship which is that you have allegiance to the united states and the laws of the government apply to you the second is that i agree with you that the federal government is the government of limited powers i just think this is within the limit and that's because it the limit is not tiny it's a big limit but it is a limit and the limit is the scope of the necessary and proper clause which if you look at justice scalia's concurring opinion and race he's talking about what's necessary and proper what's to effectuate the regulatory regime and so he's saying yes like you can close the loopholes because if if leaving the loopholes makes the regulation ineffective then there's more that could be done and i think that is another important point that this is about what could be done not about what must be done and so you know especially when we're talking about the treaty the treaty sets a floor not a ceiling it's talking about as a minimum and that this you know closing the loopholes closing the gaps is part of fulfilling the entirety of the u.s you know not international law obligation in a international law sense but of their you know what the treaty is envisioning countries doing to solve the problem and you see that in the dialogue between the united states and the united nations about its implementation of the optional protocol okay did and justice scalia included both the expanse and the the restriction in his comment when he said the relevant question is simply whether the means chosen are reasonably adapted to the attainment of a legitimate end under the the commerce power which would mean that sometimes it is and sometimes it isn't is that correct and the position simply here is that as applied challenge this is one of those that's a legitimate end certainly and i think that even if even if you want to say that not every prosecution under this statute is within the limit this prosecution certainly is and that's the findings they don't have to invoke an explicit power and it's up to the court to determine whether that rational relationship exists giving due deference to congress okay any further questions all right miss ralston uh i think on behalf of all of us we want to thank you for your uh thank you very very thoughtful answers uh and uh patience with a lot of questions coming your way so thank you very much we'll hear from mr inman uh for rebuttal thank you your honor um i just want to address a few things that that were said um the idea that the the constitution granted was a shift from the articles of confederation to grant um the federal government authority in the sphere of foreign commerce is about speaking with one voice and as judge hart said in the 10th circuit it's not about giving the federal government a megaphone so how much power are we giving when we say that in relation to the states uh the federal government controls um foreign commerce that's really what the issue is i i understand your sentiment what's really causing me to to be against your at least inclined to be against your client's position is this how can we as lower court judges get around that case because it seems to me at least it's it's being interpreted to allow for the federal government to enter into treaties to do things that it couldn't couldn't do otherwise without the treaty well there's there's two things one missouri v holland was another issue about the states exercising a power that was reserved to federal government it doesn't say anything about um you know it's u.s citizen abroad or the scope of the foreign commerce clause with respect to u.s citizen abroad the other issue is that if you're talking about treaties that are implemented the treaty that was implemented here has nothing to do with the non-commercial sex act there's an entirely separate treaty the convention on the rights of the child that does address that that the government expressly decided not to to join and when the the precursor act before you go off on that point mr inman i'm just trying to keep up with the conversation here so uh what what sentence in missouri v holland are we talking about here um that i mean you know i'm looking at it but i i'm not i'm struggling to see the sentence that purports to give the government absolute power to agree to anything it wants with respect to the regulation of americans overseas i see a reference to valid treaties but what sentence are we talking about uh just so i can understand what the issue is i don't see that you're all right i mean missouri v holland says that a treaty cannot be valid if it infringes the constitution that there are limits therefore to the treaty making power um it doesn't describe what those are and it can't derogate powers reserved to the states it can't violate other provisions of the constitution so there are limits on the treaty power and even missouri v holland recognizes that my point is that in in a typical fashion missouri v holland is another case involving a state attempting to assert a power that is reserved to the federal government so you have a dispute about um the powers of the states versus the federal government the same applies in japan line it's a dormant forming foreign commerce clause case um where we're of the federal government versus the states they don't address they don't address the situation where a treaty is enacted and whether we're using international principles of you know the universal principle or the protective principle any of those principles could be argued to to to reach u.s citizens wherever they are and that's just not we have a limited federal government that's just not works um so you know we talk about whether or not there there's a treaty that's enacted the optional protocol deals with commercial acts this is an as applied challenge there's nothing commercial about this conduct um the the the suggestion that mr reif was grooming or doing any of this stuff is not in the record of this case um and i think that those about um um the psr and the um the recommendation sentencing recommendation had statements about traveling to a different country to assist in concealment of the instant offense began working in an elementary school to preside himself with ease to provide himself with easy access to factual statements in the psr and so isn't he bound to them well the facts are that he was hired by that school he was not the facts are counsel if it's written in the psr and there is no objection then that's considered a fact of the case isn't it it's also a fact of the case that the government agreed that this was non-commercial conduct and even if even if there was some instance of grooming or or there's nothing suggesting inchoate favors or anything like that but if there's some instance of grooming or anything like that it doesn't rise to the level of commerce um i think in the sebelius case recently the supreme court said that the fact that you transact business using u.s dollars or you have a bank account or you do all these other things does not does not give the federal government power over you from cradle to grave um so not every act is a commercial act and that's certainly what morrison says is that violent offenses offenses such as the ones we're talking about here today are not commercial acts in lopez it was the same thing we're looking at possession of a gun within uh however many feet of the school uh not a commercial act um you might you might suggest that these are criminal acts but they're not commercial um i do want to address park briefly if i may um in park the the dc circuit struggled with the foreign commerce clause issue just as i can tell this panel is struggling with it um but they did note that child sexual abuse may not be quintessentially economic in every case so i i appreciate that the government believes that this case is similar to park but the gentleman in park was using a tutoring service he was here and that seems to be in an as applied challenge in park that seems to be the tipping point for that that court as as to why it was commercial but even they acknowledged that not every case involving sexual abuse of a child is commercial okay any further questions all right mr inman i i don't have in front of me this morning uh were you appointed pursuant to the all right well i want to uh enthusiastically thank you for your service you did a remarkably good job in this case both in your briefing and in your argument and uh and i would say that is true for the government as well um and so on behalf of the panel uh i want to thank you uh for your service to uh our our uh rule of law um and both of you uh for your for your assistance to us in this case thank you your honor all right well we'll uh we'll give it a very careful look case will be submitted